IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JACQUELINE KENNERLY,

Plaintiff,

v. No. 1:24-cv-00667-KG-KRS

MUTUAL OF OMAHA,

Defendant,

*and*

BRANDON WHITLEY,

Third-Party Plaintiff,

v.

MUTUAL OF OMAHA,

Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Mutual of Omaha Insurance Company's ("MOIC") Motion for Summary Judgment, Doc. 84, and the Responses filed by Plaintiff Jacqueline Kennerly, Doc. 93, and Third-Party Plaintiff Brandon Whitley, Doc. 100. The Court also considers MOIC's Reply, Doc. 94. For the reasons below, the Court grants in part and denies in part the Motion for Summary Judgment, Doc. 84. Mr. Whitley's breach-of-contract claim survives, but MOIC is entitled to summary judgment on Ms. Kennerly's claims for breach of contract, breach of the covenant of good faith and fair dealing, and violation of the New Mexico Unfair Insurance Practices Act ("UIPA").

## *I. Statement of Undisputed Material Facts*[1]

### *A. Factual History*

MOIC issued Stewart Whitley ("Decedent") an accidental death benefit policy, effective May 2022, with a benefit amount of $190,000.00 (the "Policy"). Doc. 84-1 at 12–13. Under the Policy, benefits were payable if Decedent "sustain[ed] an injury which result[ed] in death within 365 days following the date of the injury." Doc. 84-1 at 3. "[I]njury" is defined as "bodily harm which...is the direct result of an accident or trauma" that "results in loss independently of sickness and all other causes (except for sickness caused by the injury)." *Id.* The Policy excludes coverage for "death resulting directly or indirectly from disease or bodily infirmity." *Id.* at 6. Decedent named Mr. Whitley, his son, as primary beneficiary, and Ms. Kennerly, his daughter, as contingent beneficiary. *Id.* at 13. MOIC's representative and Decedent signed the Policy in New Mexico. *Id.* at 13–14.

On May 8, 2022, Decedent fell and was transported to the emergency room. Doc. 84-11 at 3. He reported that he had lost his balance and fallen face down, striking his head, chest, and abdomen. *Id.* According to the intake form, Decedent "had been having some abdominal discomfort but developed much more severe and persistent pain after the fall" and "began feeling short of breath." *Id.* at 12. The form noted that Decedent suffered from metastatic non-

[1] At the summary judgment stage, a court may consider only evidence that would be admissible at trial, or that could be presented in an admissible form. Fed. R. Civ. P. 56(c)(2). The medical records, hospital intake forms, and the medical examiner's autopsy report relied upon by the parties are business records and public records within the meaning of Federal Rules of Evidence 803(6) and 803(8), and their contents are properly considered on summary judgment. *See* Fed. R. Evid. 803(6), 803(8). Therefore, the following summary of material facts is drawn from the undisputed portions of the record and the exhibits attached to the Motion for Summary Judgment, Doc. 84, and Responses, Docs. 93, 100.

small cell lung cancer and a secondary malignant neoplasm of the brain. *Id.* at 3. Mr. Whitley told doctors that Decedent had been doing "fairly well" until his fall. *Id*. at 12.

Decedent died the following day, on May 9, 2022. Doc. 84 at 2. His death certificate lists his cause of death as "[c]omplications of metastatic neuroendocrine carcinoma," and identifies "[b]lunt force injury of the abdomen" as a "significant condition contributing to death." Doc. 84-2 at 1.

The state medical examiner's autopsy report concluded that Decedent "died of complications of metastatic neuroendocrine carcinoma with blunt force injury of the abdomen as a significant contributing condition." Doc. 84-3 at 3. The report classified the manner of death as "accident" and explained:

> The fall [Decedent] sustained caused blunt injury to the tumors in [his] abdomen. Rupturing a highly vascular area can be catastrophic and exceedingly difficult to stop bleeding. For this reason, [Decedent] died from bleeding into his abdomen...It was caused by the blunt injury to his liver sustained during the fall and the impact on his widely spread cancer.

*Id.* at 3–4.

On July 5, 2022, Ms. Kennerly notified MOIC of her father's death. Doc. 84-5 at 1. On August 3, 2022, MOIC sent her a letter explaining that, to initiate a claim, MOIC needed medical documentation and additional forms related to her father's death. Doc. 84-6 at 1. MOIC sent two follow-up letters requesting the necessary information. Doc. 84-7 at 1; Doc. 84-8 at 1. On November 3, 2022, Ms. Kennerly provided the requested information and MOIC initiated its claims-investigation process. Doc. 84-9 at 1. Over the course of the investigation, MOIC sent Ms. Kennerly seven status reports concerning her claim. Doc. 84-10; Doc. 84-11.

On June 7, 2023, MOIC sent Ms. Kennerly a denial letter, concluding that "no benefits are payable" because Decedent's death was "the direct or indirect result of his existing health

conditions." Doc. 84-12 at 1. MOIC's medical consultant had reviewed Decedent's hospital and EMS records and concluded that, while Decedent "may have experienced an injury when he fell," his death was not the direct result of an injury. *Id.* at 1–2.

### *B. Procedural History*

Ms. Kennerly filed her original complaint in New Mexico state court and MOIC removed the action to federal court based on diversity jurisdiction. Doc. 1. Ms. Kennerly brings claims for breach of contract, breach of the covenant of good faith and fair dealing, and violation of the UIPA. Doc. 1-1 at 1, 3; Doc. 37 at 1. The Court subsequently permitted Ms. Kennerly to add Mr. Whitley as a party to the action. Doc. 51 at 7.

Mr. Whitley filed an Amended Third-Party Complaint, asserting a single claim for breach of contract based on MOIC's alleged failure to pay him benefits owed under the Policy. Doc. 75 at 2. The Amended Complaint includes documents showing that he is the Policy's primary beneficiary and that Ms. Kennerly is the contingent beneficiary. *Id.*

MOIC now moves for summary judgment. Doc. 84. It argues that it is entitled to summary judgment on the breach-of-contract claim because Decedent's death was "caused in whole or part by disease," and that its denial of coverage was therefore proper "pursuant to the clear and unambiguous terms of the Policy." *Id.* at 2. MOIC further argues that it is entitled to summary judgment on Ms. Kennerly's remaining claims because she is not an intended beneficiary of the Policy and therefore may not bring suit to enforce it. *Id.*

Ms. Kennerly and Mr. Whitley oppose summary judgment. Both argue that a genuine dispute of material fact remains as to the breach-of-contract claim because a reasonable jury could find that Decedent's accidental fall, rather than his underlying health conditions, caused his death. Doc. 93 at 3; Doc. 100 at 10–11. Ms. Kennerly separately argues that MOIC

impermissibly relies on an expert report by a doctor who did not review Decedent's entire medical file and that the report is inadmissible under Daubert. Doc. 93 at 3–4.

## *II. Legal Standard*

Summary judgment is warranted if the movant establishes that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020). The defendant bears the burden of negating at least one of the essential elements upon which the plaintiff's claim is grounded. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). Once the movant meets this burden, the nonmovant is required to demonstrate that there is a genuine dispute for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986).

In applying this standard, the Court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999); *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The parties must support factual allegations with evidence, and the Court is free to consider materials such as depositions, documents, and affidavits. Fed. R. Civ. P. 56(c)(1)(A). The nonmovant cannot rely on conclusory allegations or conjecture to avoid summary judgment. *See GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200–01 (10th Cir. 2022). Rather, a "plaintiff's version of the facts must find support in the record." *Koch v. Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011).

## ***III. Analysis***

For the reasons below, the Court concludes that (A) Mr. Whitley's breach-of-contract claim survives, but (B) MOIC is entitled to summary judgment on Ms. Kennerly's claims.

### ***A. Mr. Whitley's breach-of-contract claim survives.***

As a threshold issue, New Mexico law governs the Policy, and therefore the Court applies New Mexico law to the contract claim. "[F]ederal courts sitting in diversity apply the conflicts rules of the forum state." *Pound v. Ins. Co. of N. Am.*, 439 F.2d 1059, 1062 (10th Cir. 1971). New Mexico has adopted the "familiar conflicts rule that, when interpreting a contract, the court should look to the law of the place wherein the contract was consummated." *Id.* The "place of consummation," in turn, is the place where the last act necessary to form the contract was accomplished. *Id.* Here, both parties signed the Policy in New Mexico, so New Mexico law applies. Doc. 84-1 at 13–14.

The Court turns next to the merits. Mr. Whitley's breach-of-contract claim survives because the question of whether Decedent's death resulted from a covered accidental injury remains a genuinely disputed material fact. "An insurance policy is a contract and is generally governed by the law of contracts, and the rights and duties of the parties are to be determined by its terms." *Thompson v. Occidental Life Ins. Co. of Cal.*, 1977-NMCA-071, ¶ 4. "The elements of a breach-of-contract action are the existence of the contract, breach of the contract, causation, and damages." *Abreu v. N.M. Child., Youth and Fams. Dep't*, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011). "In construing the language of an insurance policy, terms and phrases of the policy are to be given their usual and ordinary meaning unless language within the policy requires something different." *Castorena v. Colonial Life & Acc. Ins. Co.*, 1988-NMSC-070, ¶¶ 6–7. "[A]s a matter of public policy, ambiguities are generally construed in

favor of the insured and against the insurer." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 26.

Under these principles, a reasonable jury could find that Decedent's fall, rather than his preexisting cancer, caused his death and therefore that the Policy provides coverage. There is no dispute that the fall itself was an "accident" as defined by the Policy; MOIC itself classifies it as "accidental." Doc. 84 at 2. The dispute is whether, and to what extent, the accident and Decedent's underlying health conditions contributed to his death. The medical records support competing inferences on that question.

Decedent's hospital intake form states that, although he had experienced abdominal discomfort before the fall, he developed "much more severe and persistent pain" afterward. Doc. 84-11 at 12. Decedent's son, Mr. Whitley, reported that Decedent had been doing "fairly well" until the fall. *Id*. Decedent's death certificate lists his cause of death as "[c]omplications of metastatic neuroendocrine carcinoma," but also lists "[b]lunt force injury of the abdomen" as a "significant condition[] contributing to death." Doc. 84-2 at 1. The medical examiner classified Decedent's death as an "accident" and concluded that the impact ruptured tumors in Decedent's abdomen, causing the internal bleeding that led to his death. Doc. 84-3 at 3–4. Taken together, the evidence permits the inference that the fall was the proximate efficient cause because it caused a fatal injury, and that Decedent would have continued living with cancer had he not fallen. But the record also permits the inference that Decedent's underlying cancer contributed independently to his death. Because the record supports such competing inferences, the cause of Decedent's death is a genuine question of fact for a jury to decide.

*Armijo v. World Ins. Co.*, 1967-NMSC-158, is instructive. There, the insured suffered from diabetes and arteriosclerosis, was recovering from an unrelated surgery, and fell from his

hospital bed. His condition declined steadily until his death. *Id.* ¶ 8. Similar to the Policy here, the insured's policy required that death result from accidental bodily injury "independently and exclusively of disease and all other causes." *Id.* ¶ 2. And, like here, the medical evidence in *Armijo* was conflicting. One treating physician identified the fall as "the primary precipitating condition leading to his death," while another opined that "the terminal events were cerebral arteriosclerosis...and diabetes mellitus." *Id.* ¶¶ 18–19. Another physician stated that "it was pretty hard to separate all of these things and determine the extent to which any one of them contributed to death." *Id.* ¶ 21. The New Mexico Supreme Court affirmed the trial court's factual finding that the fall was the "proximate efficient cause" of death, even though "the evidence may have supported a contrary finding." *Id.* ¶¶ 11, 23. Here, too, the record presents conflicting medical evidence regarding whether, and to what extent, the fall and Decedent's underlying disease contributed to his death. Therefore, causation presents a question of fact and summary judgment is inappropriate.

MOIC's arguments to the contrary are unavailing. MOIC contends that "[t]he Policy's definition of injury and clear exclusion for death caused by disease, whether directly or indirectly, precludes any benefit payment for [Decedent's] death in this matter." Doc. 84 at 6. But that argument assumes the very fact in dispute: whether, and to what extent, Decedent's cancer caused his death. As *Armijo* demonstrates, where the medical evidence conflicts as to the combined effects of an accidental injury and an underlying disease, causation is a question for the factfinder. 1967-NMSC-158, ¶ 11, 23. Moreover, the New Mexico Supreme Court rejected a similar argument in *Couey v. Nat'l Benefit Life Ins. Co.*, 1967-NMSC-044, ¶ 7. There, the insured held a policy requiring loss to result "solely as a consequence" of an accident and "independently of all other causes." *Id.* The Court concluded that the policy could not

reasonably be construed to exclude coverage simply because the insured had an underlying health condition. *Id.* The Court explained:

> [E]very injury or disease suffered by a person from his birth to the date of a particular injury contributes to some degree to the condition then present. Necessarily, by the words used in the policy it could not have been intended that payment would be due only when the accident was literally the sole cause of hospitalization.

*Id.* ¶ 7. Under this New Mexico precedent, the Court declines to resolve causation—whether direct or indirect—as a matter of law on the present record.

MOIC's reliance on *Pirkheim v. First UNUM Life Ins. Co.*, 229 F.3d 1008 (10th Cir. 2000), is likewise misplaced. There, the Tenth Circuit construed policy language requiring that an injury occur "independently of all other causes" to exclude coverage where death results from the combined effects of an accident and a preexisting disease. *Id.* at 1010–11. MOIC contends that *Pirkheim*'s construction binds this Court because the Policy contains identical language. That argument is unpersuasive. *Pirkheim* is not binding because it arose under ERISA and applied federal law. *Id.* at 1009. Under New Mexico precedent, however, such language does not necessarily preclude coverage merely because a preexisting condition contributes to an insured's death. *See Couey*, 1967-NMSC-044, ¶ 11; *Armijo*, 1967-NMSC-158, ¶¶ 11–12.

In any event, *Pirkheim* is distinguishable on its facts. There, the insured's preexisting cardiac condition produced a fatal cardiac arrhythmia when his pacemaker failed; the accident did not cause a new, independent bodily injury. *Pirkheim*, 229 F.3d at 1009. Here, by contrast, the evidence permits a finding that Decedent's accidental fall inflicted a *new* physical injury by rupturing tumors in his abdomen. Thus, a reasonable jury could find that the fall, rather than the underlying disease, precipitated the fatal event.

Finally, MOIC attempts to distinguish *Kassa v. Plans Admin. Comm. of Citigroup, Inc.*, 2011 WL 2731208 (D.N.M.). This Court concludes, however, that *Kassa* is analogous. There, the court found coverage where the insured's accidental fall caused fractures that aggravated a preexisting cardiovascular condition and ultimately resulted in death. *Id.* at *20. As the court explained, "[b]ut for the accident, [the insured] would have remained at his baseline health level—which included atherosclerotic and hypertensive cardiac disease that was not immediately fatal and did not independently cause his death." *Id.* The medical evidence here, similarly, permits a finding that, absent the fall, Decedent would not have suffered the fatal abdominal bleeding that followed the fall. *Kassa* therefore reinforces that the Policy does not preclude coverage merely because a preexisting condition contributed to the insured's death. MOIC is thus not entitled to summary judgment.

***B. Ms. Kennerly's claims against MOIC fail.***

Next, MOIC is entitled to summary judgment on all of Ms. Kennerly's claims.

**1. Ms. Kennerly's breach-of-contract claim does not survive.**

First, MOIC is entitled to summary judgment on Ms. Kennerly's breach-of-contract claim. Ms. Kennerly alleges that MOIC violated the Policy by failing to pay her under the Policy, notify her of the Policy, instruct her on the claims process, and update her of the status of her claim. Doc. 58 at 4. But Ms. Kennerly's claim fails as a matter of law because, as a contingent beneficiary of the Policy, she lacks the ability to enforce it.

Where a contract designates a beneficiary contingently, the beneficiary's right to receive the contractual benefit depends upon the occurrence of the contingency specified in the contract. *Delaney v. First Nat. Bank in Albuquerque*, 1963-NMSC-160, ¶ 29. A contingent interest is "subject to never coming to fruition due to the happening of one of the contingencies." *Id.*

Until the specified contingency occurs—for instance, if the primary predeceases the contingent beneficiary—the contingent beneficiary does not possess a present, enforceable right to the contractual benefit. *Id.*

Under that principle, Ms. Kennerly cannot maintain a suit against MOIC to recover the Policy benefits. Because no event has occurred that would cause Ms. Kennerly's contingent interest to vest, her contingent designation does not presently entitle her to the Policy proceeds. Accordingly, she cannot enforce MOIC's alleged obligation to pay those proceeds to her. *Rose v. Rose*, 1968-NMSC-115, ¶ 1 (recognizing distinction between primary and contingent beneficiary under life-insurance policy and awarding proceeds to contingent beneficiary only after primary beneficiary forfeited her rights). Ms. Kennerly's contingent interest under the Policy has not vested; accordingly, she cannot establish a breach of a contractual duty owed to her based on MOIC's handling of the claim. Therefore, Ms. Kennerly's other contract theories—that MOIC failed to notify, contact, or otherwise update her about the claim—likewise fail.

**2. Ms. Kennerly's breach-of-covenant claim does not survive.**

Next, MOIC is entitled to summary judgment on Ms. Kennerly's breach-of-covenant claim. Ms. Kennerly argues that MOIC breached the Policy's implied covenant of good faith and fair dealing, Doc. 58 at 5–6, but the claim fails for the same reason as her underlying contract claim—she is not presently entitled to enforce the Policy.

New Mexico implies a covenant of good faith and fair dealing in every contract. *See Spencer v. J.P. White Building,* 1978-NMSC-079, ¶ 16. To establish a breach, a plaintiff must show that the defendant acted in bad faith or "wrongfully and intentionally used the contract to the detriment of the other party." *Apodaca v. Farmers Ins. Co. of Ariz.*, 702 F. Supp.

3d 1125, 1130 (D.N.M. 2023) (quoting *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, ¶ 7). The duty imposed by the covenant "becomes part of the contract and the remedy for its breach is on the contract itself." *Apodaca*, 702 F. Supp. 3d at 1131 (quoting *Bourgeous v. Horizon Healthcare Corp.*, 1994-NMSC-038, ¶ 17). Thus, if a plaintiff's covenant claim is "intrinsically tied to the damages resulting from a breach of contract" and "relies on the exact same grounds as [the] breach-of-contract claim," the covenant claim is duplicative. *Malcolm Int'l LLC v. Fisher Sand & Gravel-N.M., Inc.*, 2023 WL 7924169, at *5 (D.N.M.); *see also Armijo v. N.M. Dep't of Transp.*, 2009 WL 1329192, at *7 (D.N.M.) (dismissing "derivative" breach-of-covenant claim due to "inadequate" breach-of-contract claim). Here, Ms. Kennerly's inability to establish an enforceable right to the Policy benefits likewise defeats her claim that MOIC breached the implied covenant by failing to provide those benefits. MOIC is entitled to summary judgment on Ms. Kennerly's breach-of-covenant claim as well.

**3. Ms. Kennerly's UIPA claim does not survive.**

Finally, MOIC is entitled to summary judgment on Ms. Kennerly's claim under the UIPA, NMSA 1978, §§ 59A-16-1 to -30. Ms. Kennerly alleges that MOIC violated the UIPA by failing to: promptly, fairly, and equitably investigate and settle her claim, inform her regarding the processing of her claim, communicate with her counsel, and provide a rider referenced in the Policy. The Court disagrees.

The UIPA regulates unfair insurance practices and grants a private cause of action to "any person covered by [the Act] who has suffered damages as a result of a violation of that article by an insurer or agent." § 59A-16-30. Under the UIPA, an insurer must adopt reasonable standards for the prompt investigation of claims, § 59A-16-20(C), and attempt in

good faith to effectuate prompt, fair, and equitable settlement of claims in which liability has become reasonably clear, § 59A-16-20(E).

As a threshold matter, Ms. Kennerly's UIPA claim is not foreclosed by her status as a contingent beneficiary. Standing under the Act turns on whether the plaintiff suffered damages from a violation of the Act, § 59A-16-30, not on whether she holds a present contractual right to the insurance proceeds.

Ms. Kennerly's UIPA claim nonetheless fails on the merits because she has not put forth any evidence that MOIC violated the Act. To the contrary, the undisputed record shows that MOIC communicated with Ms. Kennerly and investigated her claim promptly. MOIC contacted Ms. Kennerly regarding the claim less than one month after she notified MOIC of her father's death. *See* Doc. 84-5 at 1; Doc. 84-6 at 1. Over the following year, MOIC sent her seven status reports. *See* Doc. 84-10 at 1–6, Doc. 84-11 at 1. After obtaining the necessary medical records, MOIC completed its investigation and issued a denial letter within two weeks. *See* Docs. 84-11 at 1; 84-12 at 1–2. This record forecloses Ms. Kennerly's contention that MOIC failed to contact her, communicate with her, or investigate her claim.

Nor has Ms. Kennerly come forward with evidence supporting her remaining allegations—that MOIC failed to communicate with her counsel and failed to provide her with a rider referenced in the Policy. Without evidence supporting her allegation, Ms. Kennerly cannot establish a violation of the UIPA. Therefore, MOIC is entitled to summary judgment on the UIPA claim.

## *IV. Conclusion*

For the reasons above, the Court grants in part and denies in part MOIC's Motion for Summary Judgment, Doc. 84. MOIC is not entitled to summary judgment on Mr. Whitley's breach-of-contract claim but is entitled to summary judgment on Ms. Kennerly's claims.

Accordingly, the Court enters judgment in favor of MOIC on Ms. Kennerly's claims and terminates Ms. Kennerly as a party to this action.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.